LEONARDO M. RAPADAS
United States Attorney
MARIVIC P. DAVID
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Agana, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for United States of America

**FILED**
DISTRICT COURT OF GUAM

OCT 17 2007

JEANNE G. QUINATA
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

UNITED STATES OF AMERICA, ) CRIMINAL CASE NO. **07-00099**
) 
Plaintiff, )
)
vs. ) **PLEA AGREEMENT**
)
MOHAMED O. SAMIDON, )
)
Defendant. )
_____)

Pursuant to Rule 11(c)(1)(B), the United States and the defendant, MOHAMED O. SAMIDON, enter into the following plea agreement:

1. The defendant agrees to waive indictment and enter a guilty plea to an Information charging him with bank fraud in violation of Title 18, United States Code, Section 1344 (Count I), and aggravated identity theft, in violation of Title 18, United States Code, Section 1028A(a)(1) (Count II).

2. The defendant, MOHAMED O. SAMIDON, further agrees to fully and truthfully cooperate with Federal law enforcement agents concerning their investigation of theft of public money, and related unlawful activities, including the disposition of profits from and assets relating to such activities. He agrees to testify fully and truthfully before any grand juries and at

- 1 -

ORIGINAL

any trials or proceedings against any co-conspirators if called upon to do so for the United States, subject to prosecution for perjury for not testifying truthfully. The United States will make this cooperation known to the Court prior to the defendant's sentencing. The defendant further understands that he remains liable and subject to prosecution for any non-violent Federal or Territorial offenses that he does not fully advise the United States, or for any material omissions in this regard. In return for this cooperation, the United States agrees not to prosecute defendant in the District of Guam or the Commonwealth of the Northern Mariana Islands for any other non-violent Federal offenses which he reveals to Federal authorities.

3. The defendant, MOHAMED O. SAMIDON, understands and agrees that any and all assets or portions thereof acquired or obtained by him as a direct or indirect result of his illegal activity shall be surrendered to the United States or any lawful agency as may be directed by the Court. The assets to be surrendered include, but are not limited to, cash, stocks, bonds, certificates of deposit, personal property and real property.

4. The defendant, MOHAMED O. SAMIDON, further agrees to submit to a polygraph examination by any qualified Federal polygraph examiner if called upon to do so by the government. The defendant understands that such polygraph examinations may include, but will not be limited to, his knowledge of or involvement in theft of public money and unlawful related activities, his knowledge of others' involvement in such activities, and the identification of any and all assets and conveyances acquired in whole or in part by the defendant or others through such unlawful activities or the use of such assets or conveyances to further such unlawful activities. Defendant understands that the government will rely on the polygraph in assessing whether he has been fully truthful.

5. The defendant, MOHAMED O. SAMIDON, understands that the <u>maximum</u> sentence for bank fraud is 30 years imprisonment, a $1,000,000 fine, and a $100 special assessment fee. Any sentence imposed shall include a term of supervised release of not more than five (5) years in addition to such terms of imprisonment as well as such restitution as the court may order. If he violates a condition of supervised release at any time prior to the expiration of such term, the

court may revoke the term of supervised release, thereby resulting in the additional incarceration of defendant for not more than three (3) years. Defendant also understands that the offense of aggravated identity theft carries a mandatory minimum penalty of two (2) years imprisonment in addition to the punishment for bank fraud, a $250,000 fine and a $100 special assessment fee. Any sentence imposed shall include a term of supervised release of at not more than one (1) year in addition to such terms of imprisonment as well as such restitution as the court may order.

The total special assessment fee of $200.00 must be paid immediately upon sentencing. The government will recommend a fine within the Sentencing Guidelines range. If defendant is financially unable to immediately pay the fine in full, defendant agrees to make a full disclosure of his financial status to the United States Attorney's Office by completing a Financial Disclosure Form (OBD-500) for purpose of fixing a monthly payment schedule. Defendant understands that, by law, interest accrues on any remaining balance of the debt. If defendant cooperates as set forth in Paragraphs 2, 3, and 4, the government will recommend that defendant receive the minimum term of incarceration legally available under the applicable statutes and Sentencing Guidelines. If defendant does not fully cooperate as set forth in Paragraphs 2, 3, and 4, the government will recommend a sentence of incarceration within the applicable statutes and Guidelines range it may deem appropriate.

6. If defendant provides full, truthful, and substantial assistance to investigating federal agencies, the government will move the Court, as provided by Section 5K1.1, United States Sentencing Guidelines, hereinafter USSG, and 18 U.S.C. Section 3553(e), for a downward departure from the Guidelines sentence. Defendant understands the following:

(a) At or before the time of sentencing, the United States will advise the Court of any assistance provided by defendant in the prosecution of another person who has committed a criminal offense. The United States may, but shall not be required to, make a motion requesting the Court to depart from the sentencing range called for by the guidelines in the event defendant provides "substantial assistance." This decision shall be in the sole discretion of the United States Attorney.

(b) It is understood and agreed that a motion for departure shall not be made, under any circumstances, unless defendant's cooperation is deemed "substantial" by the United States Attorney. The United States has made no promise, implied or otherwise, that defendant <u>will</u> be granted a "departure" for "substantial assistance." Further, no promise has been made that a motion will be made for departure even if defendant complies with

the terms of this agreement in all respects, but has been unable to provide "substantial assistance."

(c) The United States agrees to consider the totality of the circumstances, including but not limited to the following factors, in determining whether, in the assessment of the U.S. Attorney, defendant has provided "substantial assistance" which would merit a government request for a downward departure from the applicable guideline sentencing range:

> (1) the United States' evaluation of the significance and usefulness of any assistance rendered by defendant;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by defendant;
>
> (3) the nature and extent of defendant's assistance;
>
> (4) any injuries suffered or any danger or risk of injury to defendant or defendant's family resulting from any assistance provided by defendant; and,
>
> (5) the timeliness of any assistance provided by defendant.

(d) It is understood that even if a motion for departure is made by the United States, based upon defendant's perceived "substantial assistance," the final decision as to how much, if any, reduction in sentence is warranted because of that assistance, rests solely with the District Court.

7. The defendant understands that to establish a violation of bank fraud, the government must prove each of the following elements beyond a reasonable doubt:

> <u>First</u>, the defendant knowingly carried out a scheme or plan to obtain money or property from the Bank of Hawaii and Bank of Guam by making false statements or promises, with all of the jurors agreeing on at least one particular false promise or statement that was made;
>
> <u>Second</u>, the defendant knew that the statements or promises were false;
>
> <u>Third</u>, the statements or promises were material, that is they would reasonably influence a bank to part with money or property;
>
> <u>Fourth</u>, the defendant acted with the intent to defraud; and
>
> <u>Fifth</u>, the Bank of Hawaii and Bank of Guam were federally insured.

The defendant also understands that to establish a violation of aggravated identity theft, the government must prove each of the following elements beyond a reasonable doubt:

> <u>First</u>, the defendant knowingly used the means of identification of another person;

- 4 -

> Second, the defendant used the means of identification without lawful authority; and
>
> Third, the means of identification was used during and in relation to a felony violation of a federal law enumerated in 18 U.S.C. § 1344, i.e., bank fraud.

8. The defendant understands that the United States Probation Office will calculate a "sentencing range" within the United States Sentencing Guidelines. The defendant understands the Sentencing Guidelines are advisory, but will be used by the District Court in fashioning the sentence. The defendant also understands that the facts he stipulates to herein will be used by probation, pursuant to § 1B1.2 of the Sentencing Guidelines, in calculating the advisory guidelines level:

   a. The defendant was born in 1967, and is a citizen of the United States.

   b. If the defendant cooperates with the United States by providing information concerning the unlawful activities of others, the government agrees that any self-incriminating information so provided will not be used against defendant in assessing his punishment, and therefore, pursuant to § 1B1.8 of the sentencing guidelines, such information should not be used in determining the applicable guidelines range.

   c. Sometime prior to February 26, 2007, the defendant, assisted by other persons, stole a 2004 tax refund check and a 2005 tax refund check in amounts of $7,182.58 and $6,981.94, respectively, from the Government of Guam ("GovGuam") Department of Revenue and Taxation. Both tax refund checks were made payable to G.H.S. and G.G.S. - individuals whose full names are known to the parties - and were drawn on the account of GovGuam at the Bank of Guam ("BOG"). Both tax refund checks belonged to a former roommate of the defendant.

   d. Between February 26, 2007, and August 13, 2007, the defendant executed a scheme to defraud and obtain money and funds from two federally insured financial institutions: the Bank of Hawaii ("BOH") and the BOG. To accomplish the scheme, defendant intentionally and knowingly made and caused to make materially false and fraudulent statements to the banks. Defendant opened a checking account, (No. XXXX-XX3913), under his name at the BOH

branch in Hagatna, Guam, on February 26, 2007. On the same date the defendant deposited into his BOH account, and was given credit for, the stolen 2004 tax refund check of $7,182.58. On March 2, 2007, the defendant deposited into his BOH account, and was given credit for, the stolen 2005 tax refund check of $6,981.94. To effect each deposit transaction at the BOH, the defendant used the names and forged the endorsement signatures of the payees for deposit to his checking account without authorization from the payees.

    e. After the defendant deposited the stolen tax refund checks, the BOH credited defendant's account with the amounts of the deposits, and defendant withdraw cash and wrote checks against the falsely inflated balances created from the stolen and forged checks.

    f. The parties agree that the exact amount of loss should be determined at sentencing.

    g. BOH and BOG were federal financial institutions whose deposits were insured by the Federal Deposit Insurance Corporation.

    h. The defendant understands that notwithstanding any agreement of the parties, the United States Probation Office will make an independent application of the Sentencing Guidelines. The defendant acknowledges that should there be discrepancies in the final sentencing guidelines range projected by his counsel or any other person, such discrepancy is not a basis to withdraw his guilty plea.

9. The defendant understands that this plea agreement depends on the fullness and truthfulness of his cooperation. Therefore, defendant understands and agrees that if he should fail to fulfill completely each and every one of his obligations under this plea agreement, or make material omissions or intentional misstatements or engage in criminal conduct after the entry of his plea agreement and before sentencing, the government will be free from its obligations under the plea agreement; thus defendant, in addition to standing guilty of the matters to which he has pled pursuant to this agreement, shall also be fully subject to criminal prosecution for other crimes. In any such prosecution, the prosecuting authorities, whether Federal, State, or Local,

shall be free to use against him, without limitation, any and all information, in whatever form, that he has provided pursuant to this plea agreement or otherwise.

10. The defendant understands that his sentencing may be continued, at the sole discretion of the United States, until after the indictment and trial of any associates involved. This will also enable the Court to see the full degree of the defendant's cooperation. The defendant therefore waives any right he may have to any speedy sentencing and hereby agrees to any continuance of his sentencing date as it may become necessary.

11. In exchange for the government's concessions in this plea agreement, the defendant waives any right to appeal or to collaterally attack this conviction but reserves the right to appeal the sentence actually imposed in this case. The defendant understands and agrees that the government has bargained for a criminal conviction arising from his criminal conduct. If at any time defendant's guilty plea or conviction is rejected, withdrawn, vacated or reversed, for whatever reason, or is rendered invalid for any reason, or if any change of law renders the conduct for which he was convicted to be non-criminal, defendant agrees that he will enter a guilty plea to another charge encompassing the same or similar conduct. In such event, defendant waives any objections, motions or defenses based upon the Statute of Limitations, Speedy Trial Act, or constitutional restrictions as to the time of bringing such charges.

12. The defendant acknowledges that he has been advised of his rights as set forth below prior to entering into this plea agreement. Specifically, defendant has been fully advised of, has had sufficient opportunity to reflect upon, and understands the following:

    a. The nature and elements of the charge and the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law;

    b. His right to be represented by an attorney;

    c. His right to plead not guilty and the right to be tried by a jury and at that trial, the right to be represented by counsel, the right to confront and cross-examine witnesses

against him, and the right not to be compelled to incriminate himself, that is, the right not to testify;

d. That if he pleads guilty, there will not be a further trial of any kind on the charges to which such plea is entered so that by entering into this plea agreement, he waives, that is, gives up, the right to a trial;

e. Because this plea is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the defendant understands that he may not withdraw his guilty plea even if the court does not accept the sentencing recommendation of the government or his counsel;

f. That, upon entry of a plea of guilty, or thereafter, the Court may ask him questions about the offenses to which he has pled, under oath, and that if he answers these questions under oath, on the record, his answers may later be used against him in prosecution for perjury or false statement if an answer is untrue;

g. That he agrees that the plea agreement is voluntary and not a result of any force, threats or promises apart from this plea agreement;

h. That he has read this agreement, and he fully understands it;

//
//
//
//
//
//
//
//
//
//
//
//

i. The defendant is satisfied with the representation of his lawyer and feels that his lawyer has done everything possible for his defense.

DATED: 10/9/07

_____
MOHAMED O. SAMIDON
Defendant

DATED: 10/9/07

_____
RICHARD P. ARENS
Assistant Federal Public Defender
Attorney for Defendant

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and CNMI

DATED: 10/17/07    By: _____
MARIVIC P. DAVID
Assistant U.S. Attorney

DATED: 10/15/07

_____
JEFFREY J. STRAND
First Assistant U.S. Attorney

- 9 -